# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57431-4-II |
| Respondent, | (Consolidated with 57975-8-II) |
| v. | |
| JONATHAN MICHAEL ANTHONY RICARDO, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Jonathan Michael Anthony Ricardo was arrested and charged with three counts of third degree rape.  He ultimately pleaded guilty to one count of second degree assault and four other felonies.  Ricardo claims that before pleading guilty he asked his counsel whether his guilty plea could lead to civil commitment as a sexually violent predator and that his attorney answered no.

Notwithstanding this alleged advice, the attorney general later petitioned for Ricardo to be civilly committed as a sexually violent predator based on his guilty plea.  At that point, Ricardo moved to withdraw his plea, arguing that he would have not pleaded guilty if he had received accurate information from his counsel and, thus, he received ineffective assistance of counsel.

The superior court denied Ricardo's motion, reasoning that Ricardo was not prejudiced because he could have been civilly committed regardless of whether he had pleaded guilty to either the original charges or the ultimate charges.

No. 57431-4-II
(Consol. with 57975-8-II)

Ricardo appeals, claiming ineffective assistance of counsel. Because the superior court applied the wrong standard to determine prejudice, we reverse the superior court's determination that Ricardo failed to show prejudice. But because the superior court did not develop a record that enables us to evaluate Ricardo's claim, we remand for further consideration of Ricardo's motion to withdraw his guilty plea.

FACTS

I. RICARDO'S CHARGES AND GUILTY PLEA

In August 2020, Ricardo was charged with three counts of third degree rape of a child. Ricardo had criminal history from decades earlier in Oregon for first degree attempted sexual abuse and in California for a "lewd act against a child" and a "forcible lewd act against a child." Clerk's Papers (CP) at 161-62 (capitalization omitted).

The parties negotiated a potential resolution. Multiple different offers were proposed by the parties. The State offered Ricardo a plea deal for only one count of third degree rape of a child, but Ricardo turned that down because he wanted to avoid pleading guilty to a sex offense. Ricardo eventually countered with a proposal to plead guilty to one count of second degree assault and four other felonies.

The State agreed to Ricardo's proposal and moved to file an amended information in May 2021. In a declaration supporting the motion, the prosecuting attorney stated that, although the deal involved more time in prison, Ricardo wanted to avoid a sex offense. The declaration stated:

No. 57431-4-II
(Consol. with 57975-8-II)

> The Defendant did not want a sex offense on his record but wanted to resolve this matter.  The Defendant offered *In Re Bar[r]*[1] resolution to include the Assault 2 charge with additional jail time verse the sex offense charges and less time tha[n] the State was origina[lly] asking for.

Vol. 2 Suppl. CP at 4.

The amended information included one count of second degree assault, two counts of felony harassment, and two counts of second degree malicious mischief.  The second degree assault charge was based on an alleged "intent to commit a felony"; the amended information specifically stated,

> On or between July 18, 2020 and July 27, 2020 Jonathan Michael Anthony Ricardo, in Grays Harbor County, Washington (e) assaulted [victim] with the intent to commit a felony: Rape of a Child in the Third Degree.[2]

CP at 4.

Ricardo pleaded guilty to the charges in the amended information and was sentenced to 25 months in prison.

---

[1] *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 271, 684 P.2d 712 (1984) (holding that a trial court may accept a guilty plea to an amended charge lacking factual support if the facts support the original charge).

[2] Despite the second degree assault charge being based on "intent to commit" a sex offense, it was not charged as an assault committed with "sexual motivation."  The second degree assault was therefore not a sex offense as charged.  *See* RCW 9.94A.030(47)(c) (felonies outside of those listed in chapter 9A.44 RCW are only sex offenses if they were completed with "sexual motivation"); RCW 9.94A.835 (finding of sexual motivation results from filing a special allegation at the superior court).

3

No. 57431-4-II
(Consol. with 57975-8-II)

II.  ATTORNEY GENERAL'S PETITION FOR CIVIL COMMITMENT

Several months later, in December 2021, the attorney general petitioned for Ricardo to be civilly committed under Washington's sexually violent predator statute (SVP statute), chapter 71.09 RCW.  The petition argued Ricardo's second degree assault conviction was a sexually violent offense, which would make it a predicate offense under the SVP statute and, thereby, justify civil commitment under RCW 71.09.030(1)(a).  The attorney general also proposed an alternative basis for civil commitment, that Ricardo's assault conviction was a "recent overt act" that qualified him for civil commitment under section (1)(e) of the statute.[3]  CP at 162.

III.  MOTION TO WITHDRAW GUILTY PLEA

In May 2022, Ricardo moved to withdraw his guilty plea under CrR 7.8.  Ricardo argued he received ineffective assistance of counsel because he was not advised his second degree assault conviction could result in civil commitment under the SVP statute.

Ricardo and his counsel both submitted declarations supporting the motion.  In Ricardo's declaration, he said he rejected the initial plea deal offer of one count of third degree rape of a child in order to avoid the consequences of a sex offense on his record:

---

[3] RCW 71.09.030 includes multiple bases for civil commitment of sexually violent predators.  Relevant to this case are the following:

> A petition may be filed alleging that a person is a sexually violent predator and stating sufficient facts to support such allegation when it appears that: (a) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement . . . (e) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act.

RCW 71.09.030(1).

4

> The State offered to dismiss two out of three charges if I were to plead guilty to one count of Rape of a Child in the Third Degree. This was NOT acceptable to me as I wanted to avoid, as my overriding goal, going down on a sex offense conviction because of all the consequences, conditions and stigma associated with those kinds of conviction[s].

CP at 146. Ricardo also declared that he directly asked his counsel whether the plea deal could lead to civil commitment:

> I believe[d] that the plea bargain that was eventually reached would avoid all of the kinds of consequences and conditions I believed came with a sex offense, in exchange for raising my offender score and a harsher penalty in prison. That is a proof of how strongly I did not want a sex offense conviction.
>
> . . . In order to make sure, I asked my lawyer at the time . . . if this plea deal . . . could lead to an indeterminate sentence or a sex offender civil commitment.
>
> . . . [Counsel] simply told me no because it wasn't a sex offense, and I accepted that.

CP at 146. Ricardo concluded his declaration by stating that if he had known pleading guilty to the amended charges would lead to "indefinite commitment as a 'sexually violent predator,' " he would not have pleaded guilty and would have gone to trial. CP at 146.

Ricardo's counsel's declaration supported, in part, Ricardo's declaration. Counsel declared that he was unaware that the assault conviction could be a sexually violent offense, and therefore he would not have advised Ricardo that the offense could lead to civil commitment:

> Because none of the offenses of conviction were sex offenses, I did not know the Assault in the Second Degree could be considered a predicate offense under RCW 71.09, the sexually violent predator civil commitment statute. Accordingly, I would not have advised Mr. Ricardo that this conviction could constitute a predicate offense under RCW 71.09 for commitment of him as a sexually violent predator at or during the time preceding his entry of guilty plea to the offenses contained in the Amended Information.

CP at 143. But counsel stated that he "d[id] not recall whether or not Mr. Ricardo asked [him] whether [the second degree assault] conviction was a predicate offense for purposes of . . . the sexually violent predator civil commitment statute." CP at 143.

The superior court held a hearing on Ricardo's motion. At the hearing, Ricardo's counsel argued that the superior court should focus its prejudice inquiry on whether "there is a reasonable probability that but for the alleged error[,] [Ricardo] would not have plead[ed] guilty." Verbatim Rep. of Proc. (VRP) at 25.

The superior court did not answer that question. The superior court explained that, under caselaw, the possibility of civil commitment was a collateral consequence and Ricardo therefore did not need to be informed about it. The superior court also stated that whether Ricardo had directly asked about the potential for civil commitment and whether his counsel had misinformed him about that potential was not "material" because there was a risk of civil commitment with both the pleaded-to offenses and his original third degree rape of a child charges:

> I do not believe that there has been a showing of . . . prejudice. The . . . argument is that had Mr. Ricardo been convicted of rape in the third degree, that he would not have been subjected to the consequences of [the SVP statute] regarding [a] sexually violent predator petition. And I do not believe that to be correct. . . . I think under subsection (1)(e) it is clear that the attorney general's office would have had the ability to file a petition upon a finding that Mr. Ricardo's conduct supporting the charge of rape in the third degree was a recent overt act and . . . he would have been subject to the sexually violent predator act. And, in fact, in the petition that . . . has been filed by the attorney general regarding Mr. Ricardo's status as a sexually violent predator, the petition alleges the overt act subsection as one of the alternative meanings by which Mr. Ricardo, according to the attorney general, should be classified as a sexually violent predator.

VRP at 33-34. Thus, the superior court denied Ricardo's motion to withdraw his guilty plea.

6

The superior court entered findings of fact and conclusions of law on its ruling. The findings of fact included the following:

**No. 1.**

On August 3, 2020, the State filed three counts Rape of a Child in the Third Degree against the Defendant.

**No. 2.**

On May 17, 2021, the State filed an Amended Information to amend the Rape of a Child in the Third Degree charges to one charge of Assault in the Second Degree, two counts of Felony Harassment, and two counts of Malicious Mischief in the Second Degree.

. . . .

**No. 4.**

On May 16, 2022, Defense filed their Motion to Vacate.

. . . .

**No. 10.**

The fact that the Defendant claims that he directly asked about the SVP statute, which the Defense Attorney did not recall whether or not the Defendant did, is not material.

**No. 11.**

The argument that the Defendant would not have subjected to the SVP statute, if [he] had pled to the charge of Rape of a Child in the Third Degree is not a showing of prejudice.

**No. 12.**

Since the Attorney General's Office filed their SVP petition under RCW 71.09.030(1) and in the alternative under the recent over act provision pursuant to (l)(e) *the Defendant could have been subjected to the SVP statute whether pleading to either charge.*

**No. 13.**

There is not a clear showing that the Defendant was subjected to ineffective assistance of counsel prior/during/after his plea.

**No. 14.**

There is not a clear showing of a prejudice in this case.

CP at 167-69 (emphasis added).

Ricardo appealed the superior court's decision to deny his motion to withdraw his guilty plea.

IV. AMENDED PETITION AND RICARDO'S MOTION FOR RECONSIDERATION

At some point following the superior court's decision, the attorney general amended its SVP petition for Ricardo. The amended petition removed the potential basis of a "recent overt act," and only based the request for commitment on Ricardo's second degree assault conviction as a predicate sexually violent offense under RCW 71.09.030(1)(a).

After the attorney general's amended petition, Ricardo filed a motion for reconsideration of the superior court's decision to deny his request to withdraw his guilty plea. Ricardo argued that because the attorney general was then solely basing its petition on the assault conviction under subsection (1)(a) of the SVP statute, the superior court's reasoning for why he was not prejudiced was no longer valid. As he explained, the superior court originally determined that Ricardo was not prejudiced because under either his original charges (for third degree child rape) or his pleaded-to charges (for second degree assault), the SVP statute could apply because even the third degree child rape charge could qualify as a "recent overt act." But once the attorney general removed the "recent overt act" theory from its petition, Ricardo would *not* have risked SVP commitment from

the third degree child rape charge.[4]  Essentially, Ricardo argued he could show prejudice, even under the superior court's reasoning, because after the attorney general's amended petition, he could not have been civilly committed under the original third degree rape charge.

The superior court denied Ricardo's motion for reconsideration in an order without further explanation.  Ricardo also appeals from that order.  This court has consolidated Ricardo's appeals.

ANALYSIS

On appeal, Ricardo again argues that he received ineffective assistance and that he should be allowed to withdraw his guilty plea.  Ricardo contends that the superior court applied the wrong standards for its ultimate decision that he was not prejudiced.  We agree that the superior court erred and remand for proceedings consistent with this opinion.

I.  LEGAL PRINCIPLES

A.  WITHDRAWAL OF A GUILTY PLEA

We review the superior court's denial of a motion to withdraw a guilty plea for an abuse of discretion.  *State v. Wilson*, 162 Wn. App. 409, 414, 253 P.3d 1143, *review denied*, 173 Wn.2d 1006 (2011).  A superior court abuses its discretion when it bases its decision on untenable grounds or reasons.  *State v. Pugh*, 153 Wn. App. 569, 576, 222 P.3d 821 (2009).  Application of an

---

[4] Ricardo's reasoning was rooted in the SVP statute's requirement related to predicate sexually violent offenses.  As explained below, a person may be subject to civil commitment if they are either about to be released from serving time for a sexually violent offense or if they have in the past committed a sexually violent offense and have now committed a "recent overt act."  RCW 71.09.020(13), .030(1)(a), (e).  Because third degree rape of a child is not a sexually violent offense under RCW 71.09.020(18), a third degree rape conviction would only enable the State to seek civil commitment in this case if it was a recent overt act, with the predicate sexually violent offense being one of Ricardo's Oregon or California convictions.

incorrect legal standard is an abuse of the superior court's discretion. *State v. Gentry*, 183 Wn.2d 749, 764, 356 P.3d 714 (2015).

Superior courts must allow a defendant to withdraw a guilty plea to prevent a manifest injustice. *Wilson*, 162 Wn. App. at 414; CrR 4.2(f). Our courts generally recognize four indicia of a manifest injustice:

> (1) denial of effective assistance of counsel, (2) failure of the defendant or one authorized by him to do so to ratify the plea, (3) involuntary plea, and (4) violation of plea agreement by the prosecution.

*State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000).

B. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant possesses a right to effective assistance of counsel in criminal proceedings. *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show that they received ineffective assistance of counsel, a defendant must show (1) that their attorney performed deficiently and (2) that the deficiency prejudiced the defendant. *Id.* at 687; *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We engage in a strong presumption that counsel's performance was reasonable. *Id.* A claim of ineffective assistance presents a mixed question of law and fact that we review de novo. *State v. Martinez*, 161 Wn. App. 436, 441, 253 P.3d 445, *review denied*, 172 Wn.2d 1011 (2011).

10

In the context of a guilty plea, to show that they were prejudiced by their counsel's actions for the *Strickland* test, the defendant must show that there is a reasonable probability that they would not have pleaded guilty and would have instead insisted on proceeding to trial. *State v. Sandoval*, 171 Wn.2d 163, 174-75, 249 P.3d 1015 (2011). "A 'reasonable probability' exists if the defendant 'convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Id.* at 175 (alteration in original) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). The reasonable probability standard is " 'somewhat lower' " than a preponderance of the evidence standard. *Id.* (quoting *Strickland*, 466 U.S. at 694).

C.  SVP STATUTE

The legislature has found that there is a small but dangerous group of people with "personality disorders and/or mental abnormalities" that "render them likely to engage in sexually violent behavior." RCW 71.09.010. Because the likelihood of engaging in repeated acts of sexual violence is high, long term civil commitment may be appropriate for persons who fall into that group. RCW 71.09.010.

When the State files a petition for civil commitment under the SVP statute, a trial is conducted to determine whether the person is a sexually violent predator and should be civilly committed. RCW 71.09.050, .090. A "sexually violent predator" is a "person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in . . . acts of sexual violence if not confined in a secure facility." RCW 71.09.020(19).

11

There are multiple ways for a person to qualify for civil commitment. RCW 71.09.030. Relevant to this case, a defendant may qualify for civil commitment if they are either just about to be released from confinement for a sexually violent offense ((1)(a)), or if the offender had in the past committed a sexually violent offense he had been released from and has now committed a recent overt act ((1)(e)):

> (a) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement; . . . or (e) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act.

RCW 71.09.030(1). Only specific offenses qualify as a "sexually violent offense." RCW 71.09.020(18). Courts often refer to the sexually violent offense that led to civil commitment as a "predicate offense." *See In re Det. of Mines*, 165 Wn. App. 112, 126, 266 P.3d 242, *amended on reconsideration* (Dec. 29, 2011), *review denied*, 173 Wn.2d 1032 (2012). Second degree assault, if found to be sexually motivated, qualifies as a predicate sexually violent offense, but third degree rape of a child does *not* qualify. RCW 71.09.020(18).[5]

---

[5] The use of the term "sexually motivated" can be used in two different, but similar, capacities—for a felony to be considered a sex offense at the time of conviction and for a conviction to be later used as a predicate sexually violent offense for SVP purposes. *See* RCW 9.94A.030(47)(c); RCW 71.09.020(18). The definitions for these two uses are the same. *See* RCW 71.09.020(18) (incorporating the criminal definition for sexual motivation). But even if a special allegation of sexual motivation is not found at the superior court for an initial criminal conviction, the civil court in an SVP proceeding is not foreclosed from independently determining that a crime, if listed in RCW 71.09.020(18), was done with sexual motivation, allowing it to be considered a predicate sexually violent offense. *See In re Det. of Stout*, 159 Wn.2d 357, 362, 372, 150 P.3d 86 (2007) (State alleged burglary conviction was sexually motivated at civil level when the issue was not considered at the criminal level).

For subsection (e) of the statute, a "recent overt act" means any "act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(13).

II.  APPLICATION

Ricardo asserts that he received ineffective assistance because his counsel told him that his second degree assault conviction would not lead to civil commitment. Ricardo argues that the superior court erred in its prejudice determination because it focused on whether he would be subject to the SVP statute if he pleaded guilty to third degree rape of a child, rather than whether specific knowledge of pleading to a predicate offense would have changed his decision to plead guilty.

Here, the superior court determined that Ricardo did not show he received ineffective assistance of counsel because he failed to show he was actually prejudiced. Again, the superior court focused its inquiry on whether Ricardo was at risk for SVP commitment under either the original charges or the pleaded-to charges. Its findings of fact stated,

**No. 12.**

Since the Attorney General's Office filed their SVP petition under RCW 71.09.030(1) and in the alternative under the recent over act provision pursuant to (l)(e) *the Defendant could have been subjected to the SVP statute whether pleading to either charge*.

**No. 13.**

There is not a clear showing that the Defendant was subjected to ineffective assistance of counsel prior/during/after his plea.

**No. 14.**

There is not a clear showing of a prejudice in this case.

13

CP at 169 (emphasis added). Considering those findings of fact together, the superior court reasoned that because civil commitment was potentially an option for Ricardo even if he had been convicted of third degree rape of a child, he was not prejudiced when civil commitment was always a possibility.

We agree that the State could have petitioned for Ricardo to be civilly committed under either the original charges or the pleaded-to charges. But we disagree that this is the correct question. Rather, the superior court should have focused on whether, with accurate information, there is a reasonable probability that Ricardo would not have pleaded guilty at all and, instead, would have instead insisted on proceeding to trial. *See Sandoval*, 171 Wn.2d at 174-75. Using the wrong standard and question to determine whether Ricardo was prejudiced was an abuse of discretion.

However, because the superior court focused elsewhere, it did not develop the facts required to answer the correct question. For example, we have no development of facts surrounding Ricardo's risks in going to trial or likelihood of acquittal. We have no development of facts related to the likelihood of civil commitment depending on various outcomes. In addition, the comparability of Ricardo's Oregon and California convictions to Washington offenses could be relevant to whether these convictions could serve as predicate offenses under the SVP statute. RCW 71.09.020(18) (a sexually violent offense may include an out-of-state conviction that is comparable to an enumerated sexually violent offense in Washington).

Even if SVP civil commitment was always a possibility for Ricardo, weighing the details of his plea deal would still be relevant to evaluate prejudice. Although Ricardo was willing to take

14

a plea deal with longer sentence to avoid having a sex offense on his record, if Ricardo had known that there was always the potential to be labelled a "sexually violent predator," perhaps merely avoiding a sex offense on his record may not have been a reasonable trade for a longer sentence. Weighing all these considerations is important to the question of whether proceeding to trial rather than taking the plea deal would have been "rational." *Sandoval*, 171 Wn.2d at 174-75.

These are still remaining undeveloped facts for a decision on prejudice. We do not speculate about the appropriate end-result if a complete consideration of these facts had occurred; it is plausible that Ricardo will ultimately fail to establish prejudice in the end. But the initial development of those factual considerations is more appropriate for the superior court. *See State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (we defer to the trial court's findings of fact on conflicting testimony, credibility issues, and persuasiveness of the evidence).

But even if this question of prejudice requires more factual development, Ricardo must also meet the first prong of the *Strickland* test—whether there was deficient performance. We briefly address that prong next.

DEFICIENT PERFORMANCE

Notwithstanding the superior court's error of asking the incorrect question for prejudice, Ricardo must still show his counsel's performance was deficient.

Affirmative misinformation of a direct consequence always renders a plea involuntary. *State v. A.N.J.*, 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010). But misinformation on *collateral* consequences does not necessarily warrant withdrawal of a guilty plea as involuntary. *See State*

15

*v. Gregg*, 196 Wn.2d 473, 484-85, 474 P.3d 539 (2020); *State v. Stowe*, 71 Wn. App. 182, 188, 858 P.2d 267 (1993) ("The voluntary nature of a defendant's guilty plea is not automatically destroyed because of erroneous advice by counsel."). "The distinction between direct and collateral consequences of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *A.N.J.*, 168 Wn.2d at 114 (internal quotation marks omitted).

SVP civil commitment is a "significant deprivation of liberty" for which defendants are entitled to due process protections. *In re Det. of Law*, 146 Wn. App. 28, 43, 204 P.3d 230 (2008), *review denied*, 165 Wn.2d 1028 (2009). Nevertheless, historically, SVP commitment has been held to be a collateral consequence of pleading to a predicate sexually violent offense. *In re Pers. Restraint of Paschke*, 80 Wn. App. 439, 444-45, 909 P.2d 1328 (1996).

In the context of an ineffective assistance of counsel claim, misinformation about the collateral consequences of a guilty plea can form the basis for withdrawing a guilty plea if the consequence is " 'of an unquestionable serious nature.' " *A.N.J.*, 168 Wn.2d at 116 (quoting *Stowe,* 71 Wn. App. at 188.) And misinformation of a collateral consequence is specifically relevant to whether the defendant received deficient performance; the question is whether counsel's failure to provide correct information about a collateral consequence fell below an objective standard of reasonableness. *Stowe,* 71 Wn. App. at 187-88.

Here, Ricardo claims that he directly asked his counsel whether civil commitment was a possibility with his plea deal and was told no. While Ricardo's counsel could "not recall whether" Ricardo had asked that question, he admitted he misunderstood the law—he was not aware second

degree assault could be a predicate sexually violent offense that could lead to civil commitment under the SVP statute—and he would have given false advice had he been asked. CP at 143.

But the superior court ultimately determined that whether that conversation occurred was "not material" when the motion to withdraw Ricardo's plea was resolved on prejudice. CP at 169. Now that we have concluded that the issue of prejudice is unresolved and requires further development, whether that conversation occurred as claimed by Ricardo may well be material. However, without the superior court probing the accuracy of Ricardo's version, we have no findings upon which to evaluate Ricardo's claim of deficient performance. Thus, remand to have the superior court make findings on this question is appropriate.

Having decided that remand is necessary on the prejudice prong, we also hold that remand is necessary for further development of the record on the deficient performance prong of the *Strickland* test.

CONCLUSION

Assessing Ricardo's claim of ineffective assistance of counsel in the context of his motion to withdraw his plea involves factual considerations on both *Strickland* prongs—prejudice and deficient performance. Because the superior court erred in applying the proper standard in its consideration of prejudice and did not consider deficient performance based on its prejudice determination, we have an incomplete factual record from which to evaluate Ricardo's appeal. Accordingly, we reverse and remand for the superior court to develop the factual record and rule on Ricardo's motion under the correct standards.

17

No. 57431-4-II
(Consol. with 57975-8-II)


A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.


PRICE, J.

We concur:

CRUSER, C.J.

LEE, J.


18